## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BERNADETTE SIMMS CARTER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1173** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## MOTION FOR REMAND

Bernadette Simms Carter ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g)

and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the

"Commissioner") denying her deceased husband's applications for disability insurance benefits

("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act.  Before the Court is Plaintiff's letter brief construed as a motion for summary

judgment or for remand (ECF No. 17), Defendant's Motion for Summary Judgment (ECF No.

19), and Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 21).[1]

Defendant contends that substantial evidence in the administrative record supports the

Commissioner's final decision that Plaintiff's husband was not disabled before July 20, 2010.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's motion for remand is **GRANTED**.

# I

## Background

Plaintiff's deceased husband, Wesley W. Carter ("Carter"), was born in 1961, had an eleventh-grade education, and previously worked as a hospital janitor.  R. at 210, 237, 240.  Carter applied for DIB and SSI on January 9, 2009, alleging disability beginning on January 1, 2004, due to diabetes, chronic back pain, a herniated disc, and nerve damage.  R. at 210-20, 236.  The Commissioner denied Carter's applications initially and again on reconsideration; consequently, Carter requested a hearing before an Administrative Law Judge ("ALJ").  R. at 28-31, 44-58.  Carter died on November 27, 2010 (R. at 308), and Plaintiff was substituted as a party (R. at 306).  On September 27, 2011, ALJ William L. Akers held a hearing in Baltimore, Maryland, at which Plaintiff testified and was represented by counsel.  R. at 697-704.  On December 30, 2011, an ALJ issued a partially favorable decision finding Carter disabled beginning on July 20, 2010.[2]  R. at 12-25.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 19, 2013.  R. at 6-10.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 22, 2013, Plaintiff filed a *pro se* complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  Plaintiff thereafter filed her letter brief (ECF No. 17), and the Commissioner filed her Motion for Summary Judgment (ECF No.

---

[2] ALJ Kathleen Scully-Hayes signed the decision on behalf of ALJ Akers.  R. at 25.

19).  On December 17, 2013, the Clerk of Court notified Plaintiff that she had seventeen days to file a response to Defendant's Motion for Summary Judgment and that failure to file a timely written response could lead to dismissal of the case or to entry of judgment against her without further notice.  ECF No. 20.  On January 6, 2014, Plaintiff filed her Response to Defendant's Motion for Summary Judgment.  ECF No. 21.  The case subsequently was reassigned to the undersigned.  The matter is now fully submitted.

**II**

**<u>Summary of Evidence</u>**

**A.      State Agency Medical Consultant**

On August 22, 2009, J. Johnston, M.D., assessed Carter's physical residual functional capacity ("RFC") relating to his claim for SSI only.  R. at 420-27.  Dr. Johnston opined that Carter could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 421.  Carter frequently could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. R. at 422.  He occasionally could climb ladders, ropes, and scaffolds.  R. at 422.  Carter was to avoid concentrated exposure to hazards, such as machinery or heights.  R. at 424.  According to Dr. Johnston, Carter had no manipulative, visual, or communicative limitations.  R. at 423-24.  Dr. Johnston found insufficient evidence before Carter's date last insured for his claim for DIB.  R. at 427.

**B.      D.O. Lawoyin, M.D.**

The ALJ reviewed Dr. Lawoyin's opinion in his decision:

D.O. Lawoyin, M.D., diagnosed [Carter] during March of 2010 with diffuse peripheral diabetic neuropathy with unsteady gait, uncontrolled diabetes mellitus

3

with wide fluctuations.  Dr. Lawoyin noted that [Carter] was able to sit but had issues with standing/walking.  Dr. Lawoyin did not further detail [Carter's] alleged limitations.  Dr. Lawoyin also noted that [Carter] could not consistently climb, balance, stoop, crouch, kneel or crawl "as would support productive outcome."  Dr. Lawoyin also noted that [Carter] was limited in reaching, handling, feeling, pushing/pulling, and seeing, and that [Carter] could not be exposed to moving machinery, temperature extremes, chemicals, fumes, humidity or vibrations.

R. at 22; *see* R. at 432-34.

**C.     Plaintiff's Testimony**

In his decision, the ALJ summarized Plaintiff's testimony:

[Carter] died on November 27, 2010.  The cause of death was listed on his death certificate as "failure to thrive" and hepatitis C.  [Carter's] widow, Bernadette Carter, appeared at the hearing and testified that she and [Carter] had been separated since 2005.  She noted that [Carter] had substance abuse issues and that he stopped using drugs after his fingers had to be amputated.  [Carter] had worked in construction and at a car wash.

R. at 21; *see* R. at 700-03.

The Court reviews other portions of the record more fully in its discussion below.  *See infra* Part VI.

## III

## <u>Summary of ALJ's Decision</u>

On December 30, 2011, the ALJ found that Carter (1) had not engaged in substantial gainful activity since the alleged onset date of disability (which the ALJ stated in his decision as December 1, 2004); and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy before July 20,

2010, but could not do so beginning on that date.  R. at 20-25.  The ALJ accordingly found that

he was disabled from July 20, 2010, through Carter's date of death on November 27, 2010.  R. at

25.

In so finding, the ALJ found that Carter had the RFC to perform the full range of light

work before July 20, 2010.  R. at 20.[3]  Beginning on that date, however, Carter had the RFC to

perform sedentary work,[4] except that he lacked bilateral dexterity because of his two amputated

fingers.  R. at 23.  The ALJ found that

> [Carter's] additional impairment significantly limited him from properly utilizing
> his bilateral hands for activities requiring manual dexterity.  This greater
> vocational adversity significantly reduced his ability to engage in functional
> activity and reduced [Carter's] functioning to the point that he became disabled on
> July 20, 2010 through his date of death of November 27, 2010.

R. at 23.

The ALJ also weighed the opinion evidence in the record, giving "little weight" to the

state agency medical consultant's opinion and "limited weight" to Dr. Lawoyin's opinion.  R. at

22-23.  The ALJ found that "no treating or examining physician reported any sustaining

disabling limitations due to [Carter's] physical impairments, nor had anyone restricted [Carter]

from any work because of his conditions during this time."  R. at 23.

Further, the ALJ found that Carter's "medically determinable impairments could have

reasonably been expected to cause the alleged symptoms; however, [his] allegations concerning

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the
weight lifted may be very little, a job is in this category when it requires a good deal of walking
or standing, or when it involves sitting most of the time with some pushing and pulling of arm or
leg controls."  *Id.*

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or
carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a),
416.967(a).

the intensity, persistence and limiting effects of these symptoms are not credible prior to July 20,

2010, to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 21.  In this

regard, the ALJ stated in his decision:

> To begin with, treatment records show that [Carter] had uncontrolled diabetes
> mellitus due to lack of medication compliance.  [Carter's] substance abuse
> addiction also affected his compliance.  Although [Carter] alleged ongoing,
> chronic pain levels, [Carter's] longitudinal treatment records do not substantiate
> these allegations.  Specifically, [Carter] does not have concurrent medical
> examinations or opinions supporting these claims.

R. at 21.  The ALJ found that "there is no evidence of record to substantiate [Carter's] combined

impairments as having produced any more than the above referenced limitations, or any more

than, at most, mild-to-moderate functional limitations on his ability to engage in basic work

activities."  R. at 23.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country."   42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## <u>Standard of Review</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to

differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Defendant contends that the ALJ properly evaluated Carter's disability claim using the five-step sequential evaluation process outlined above in Part IV.   The Court has carefully reviewed the ALJ's decision and the entire record.   See *Matthews v. Comm'r, Soc. Sec.*, Civil Case No. ELH-13-1720, 2014 WL 1427182, at *1 (D. Md. Apr. 11, 2014) (citing *Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping analytical framework for judicial review of pro se action challenging adverse administrative decision, including (1) examining whether Commissioner's decision generally comports with regulations, (2) reviewing ALJ's critical findings for compliance with the law, and (3) determining from evidentiary record whether substantial evidence supports ALJ's findings)), *adhered to on denial of reconsideration*, 2014 WL 2738276 (D. Md. June 16, 2014).

As noted in Part III above, the ALJ proceeded through all five steps of the sequential evaluation process.   At step one, the ALJ found that Carter had not engaged in substantial gainful activity since the alleged onset date of disability.   R. at 20.   At step two, the ALJ found Carter's impairments of diabetes mellitus, hepatitis C, and heroin abuse to be severe.   R. at 20.

At step three, "[t]he Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'   A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"   *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.   The ALJ found that Carter's

impairments neither met nor equaled any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 20.

At step four, the ALJ found Carter's RFC before July 20, 2010, to be limited to the full range of light work (R. at 20) and applied Medical-Vocational Guideline Rule 202.17 under 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.17, to find that Carter was not disabled before that date (R. at 24).[6]  In determining Carter's RFC, the ALJ invoked the two-part process for evaluating a claimant's subjective complaints and found that Carter's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his allegations concerning the intensity, persistence, and limiting effects of these symptoms were not credible before July 20, 2010, to the extent that they were inconsistent with an assessment of a full range of light work.  R. at 20-21.

When a claimant alleges disability due to pain, the ALJ must apply the Commissioner's regulations, which establish a two-step process for evaluating whether a person is disabled by pain and other symptoms.  *Huntington v. Apfel*, 101 F. Supp. 2d 384, 392 (D. Md. 2000) (citing *Craig*, 76 F.3d at 594; 20 C.F.R. §§ 404.1529, 416.929).  At the first step, the ALJ must determine that objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual pain in the amount and degree alleged by the claimant.  *Id.* (citing *Craig*, 76 F.3d at 594).  "At the second step of the *Craig* inquiry, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine the extent to which those symptoms limit the claimant's capacity to work."  *Id.* (citing *Craig*, 76 F.3d at 595; 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)).  At this second stage, the

---

[6] Rule 202.17 applies to a "younger individual" from 18 to 49 years of age who is capable of performing the full range of light work, has a limited education, is literate and able to communicate in English, and has either unskilled or no previous work experience.  20 C.F.R. pt. 404, subpt. P, app. 2, §§ 202.00(g), 202.17.

ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and his treating or examining physicians, objective medical evidence of pain, and any other information submitted by the claimant, such as the claimant's account of what aggravates the pain, medications taken to alleviate the pain, and a summary of how the pain affects daily living.  *Id.* (citing 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3)).

"The ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims of pain can reasonably be accepted."  *Id.* (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  "Subjective symptoms of pain, standing alone, cannot sustain a finding of disability, and a claimant must substantiate his allegations of pain."  *Id.* (citing *Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (Luttig, J., concurring); 20 C.F.R. § 404.1529).  "The ALJ must make a finding regarding a claimant's credibility and should refer specifically to the evidence supporting this finding."  *Id.* at 392-93 (citing *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam)); *see Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 338-39 (D. Md. 2003).

Furthermore, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling."  *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam).  "The regulations authorize the ALJ to consider whether a claimant's alleged symptoms, including pain, are consistent with the treatment received to relieve symptoms."  *Eaton v. Astrue*, Civil No. JKS-11-2497, 2012 WL 3241042, at *9 (D. Md. Aug. 6, 2012) (citing 20 C.F.R. §§ 404.1529(a), (c)(3)(iv)-(vi), 416.929(a), (c)(3)(iv)-(vi)).

> If the alleged severity of the symptoms is inconsistent with the frequency and level of medical treatment received—and the claimant does not provide "good reasons" for failing to seek treatment comparable to the pain alleged—the ALJ may conclude that the claimant's statements about the severity of his symptoms are not fully credible.

*Id.* (citing, *inter alia*, *Mickles*, 29 F.3d at 921, 930); *see* Social Security Ruling 96-7p.[7]

In addition, "[i]n order to get benefits, the regulations require claimants to follow treatment prescribed by their physicians that might restore their ability to work." *Eiker v. Astrue*, Civil Action No. CBD-11-3584, 2013 WL 2149755, at *9 (D. Md. May 15, 2013) (citing 20 C.F.R. §§ 404.1530(a), 416.930(a)). "However, they also provide acceptable reasons for failure to follow prescribed treatment and require that a claimant's physical, mental, educational, and linguistic limitations be considered." *Id.* (citing 20 C.F.R. §§ 404.1530(c), 416.930(c)).

> In order for benefits to be denied based on noncompliance with treatment, the ALJ "must conduct a particularized inquiry and develop a record establishing by substantial evidence that the claimant's impairment is reasonably remediable by the claimant given the claimant's particular situation and that the claimant lacks good cause for failing to follow a prescribed treatment program."

*Id.* (alteration in original) (quoting *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274 (D. Md. 2003)); *see Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985). "The burden is on the Commissioner to establish treatment noncompliance without justification." *Eiker*, 2013 WL 2149755, at *9 (citing *Fleming*, 284 F. Supp. 2d at 274). "Further, it is improper to penalize a claimant for not seeking treatment due to an inability to afford it." *Id.* (citing *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

Here, the ALJ discussed the medical evidence, finding that Carter's diabetes mellitus was uncontrolled because of medication non-compliance. R. at 21-22 (citing R. at 327-410, 416-19, 432-534). Specifically, the ALJ noted Carter's non-compliance in January, March, and

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

November 2009.  R. at 22.  The record indicates, however, that in November 2009 Carter had not taken his insulin for two weeks because his supply of medication had run out and he had been unable to see his physician (R. at 435, 440, 454), although he did have insurance while he was homeless (R. at 440-41).  His supply of medication also had run out in January 2009.  R. at 512. In March 2009, Carter reported that he had not been taking his insulin because of side effects that made him ill.  R. at 450.  Further, in November 2008, Carter had been without insulin for a month.  R. at 22, 514.  It is reasonable to believe that he was unable to seek treatment at times because of his apparent poverty before his death.  Remand in this case is appropriate for the Commissioner to establish that Carter's condition was remediable and that he lacked good cause for not complying with treatment.  *See Eiker*, 2013 WL 2149755, at *10.  The Court accordingly need not address Plaintiff's argument regarding the medical records attached to her Response to Defendant's Motion for Summary Judgment, *see, e.g.*, *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345-46 n.6 (4th Cir. 2012), but notes that, on remand, either party may introduce additional evidence.  *See King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**.  Plaintiff's motion for summary judgment is **DENIED**.  Plaintiff's motion for remand is **GRANTED**.  A separate order shall issue.


Date: September 12, 2014                                           /s/
                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge


14